ROBINSON (EVANS v.). See Case No. 4,571.

## Case No. 11,951.

### ROBINSON v. GALLIER et al.

[2 Woods, 178.][1]

Circuit Court, D. Louisiana. Nov. Term. 1875.

SURVIVORSHIP — LEGAL PRESUMPTIONS — HEIRS—
BURDEN OF PROOF—DEGREE OF PROOF.

1. Where two persons perish in the same event, there are no presumptions of law as to survivorship unless prescribed by positive enactment.

2. The presumptions of law as to survivorship prescribed by the Civil Code of Louisiana, where two persons perish in the same event, only apply in the absence of circumstances of the fact, and where the persons are respectively entitled to inherit from one another.

3. Where a male sixty-eight years of age, and a female forty-four years of age, respectively entitled to inherit from one another, perish in the same event, the presumption raised by article 939 of the Civil Code of Louisiana, in the absence of circumstances of the fact is, that the male perished first.

4. Where the title of the plaintiff who seeks to disturb the possession of others depends on the fact that the person under whom he claims survived another, though both perished in the same event, and the case admits of no presumptions of law, the burden of proof is on the plaintiff to establish the fact of survivorship. If it appear that both persons perished at the same instant, or if it shall be impossible to declare from the evidence which perished first, the plaintiff must fail.

5. But the fact of such survivorship does not require any higher degree of proof than other facts in a civil case.

Action at law [by William Robinson against Josephine A. Gallier, and others]. The suit was brought by the heirs at law of Mrs. Catharine R. Gallier, who was in her lifetime the wife of James Gallier Sr., against the heirs at law of said James Gallier Sr., to recover certain valuable real estate in the city of New Orleans, and $5,000 in coin. The undisputed facts in the case were as follows: James Gallier Sr., a citizen of Louisiana, made and executed his last will, by which he devised in fee to his said wife the real estate which was in part the subject of the controversy

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

in this suit, and also $5,000 in coin. The plaintiffs in this action were the heirs at law of Mrs. Gallier, who was the wife of the testator, and the defendants were the widow in community and the children of James Gallier Jr., deceased, who was the only child and heir at law of James Gallier Sr. Under the law of Louisiana, Mr. and Mrs. James Gallier Sr. were not entitled to inherit from one another. The defendants were in possession of all the real and personal estate left by the said James Gallier Sr. Mr. and Mrs. James Gallier Sr. were passengers on the steamship Evening Star, which left New York for New Orleans on the afternoon of Saturday, September 29, 1866. There were on board 213 passengers, besides the crew. On the afternoon of Tuesday, October 2, the steamship, when about 180 miles east of the Georgia coast, encountered a gale which, by midnight, became a hurricane. During the night the ship became disabled, fell into the trough of the sea and sprung a leak. About 5 o'clock in the morning of October 3d, she went down. Mr. and Mrs. Gallier Sr. perished. Only twenty-three persons of the passengers and crew survived the disaster, and were saved. Mr. Gallier Sr. was, at the time of his death, sixty-eight years of age, and his wife was forty-four. He was about five feet ten inches in height, and of rather spare habit. She was a little below the medium height, and weighed 212 pounds.

Article 1697 of the Civil Code of Louisiana declares that "the testamentary disposition becomes without effect if the person instituted or the legatee does not survive the testator." It was therefore conceded by counsel for plaintiffs that the legacy to Mrs. James Gallier Sr. in the will of her husband did not take effect and the plaintiffs in this action had therefore no title, unless Mrs. Gallier survived her husband; that the legacy lapsed if both Mr. and Mrs. Gallier died at the same moment, or if Mr. Gallier survived his wife. The only issue submitted to the jury was, whether or not Mrs. Gallier survived her husband. To sustain the issue on their part, the plaintiffs offered evidence tending to show, in addition to the facts above recited, that Mr. Gallier was, at the time of their death in feeble health, and that his wife was of strong constitution and in robust health. The plaintiffs also adduced in evidence the depositions of E. A. Van Sickle and Frank Girard, both of whom were survivors of the loss of the Evening Star. The former testified, that he first saw Mr. and Mrs. Gallier on deck as the Evening Star steamed down the Bay of New York. He asked the purser, Mr. Allen, who they were, and was told by him, that they were Mr. and Mrs. Gallier, and he afterwards heard the lady addressed as Mrs. Gallier. He never saw Mr. Gallier after five o'clock, p. m., of the second day of October, the day before the steamer was lost. About an hour after the ship sunk, Van Sickle says, that having been in the water for that length of

time, he neared the life boat, and then saw Mrs. Gallier also in the water. She caught hold of him, and when they reached the life boat he helped her into it. The boat was capsized five times within a very few minutes. Mrs. Gallier was helped into the boat four times, first by witness and subsequently, three times by witness and others. When the boat was capsized the fifth time, Mrs. Gallier was drowned.

Frank Girard testified, that he was an actor by profession, that he was a passenger on the Evening Star on the voyage when she was lost; that he knew Mr. and Mrs. Gallier, having been introduced to them by Capt. Knapp of the Evening Star. He saw Mrs. Gallier for the last time, between half past six and seven o'clock of the morning of October 3, 1866, after the sinking of the Evening Star. She was in the water supporting herself on a piece of timber. She was at the side of the boat in which he was. Almost immediately afterwards he lost sight of her. He further testified, that about two or three o'clock of the morning of October 3d, he saw both Mr. and Mrs. Gallier in their state room. Mr. Gallier was lying in his berth with his eyes closed, and Mrs. Gallier was sitting by his side weeping. He never after that saw Mr. Gallier.

The defendants introduced the evidence of Anthony McMahon, second assistant engineer, Dennis Gannon, waiter, and Alexis Sauza, passenger.

McMahon testified, that after the sinking of the steamer he succeeded in getting into a life boat, the same in which Van Sickle was. That there were three women and only three at any time in the boat. Two of these were saved. The third was taken in after the boat was first righted, but she was afterwards lost. She was taken in for the last time after the boat had been capsized three times, and was so exhausted that she could not speak. She could not hold on and was lost out of the boat. She was a woman weighing about one hundred and thirty pounds, about twenty-three years old and of medium size.

Gannon testified that he knew Mr. and Mrs. Gallier, having waited upon them while they were passengers on the Evening Star; that about five minutes before the steamer went down he saw both Mr. and Mrs. Gallier in their state room, he standing and holding to the top of the berth to steady himself, and she sitting or leaning against the side of the state room. After running around to find a life preserver, and getting one, Gannon climbed from the cabin to the hurricane deck through a sky light, and in one or two minutes after, the ship sunk. He did not go to the deck by the stairs, because there were about a dozen persons on them, and he thought he could get up quicker through the sky light. He got in a life boat after the ship sunk but not the same boat in which Van Sickle was. He saw many persons in

the water but did not see either Mr. or Mrs. Gallier among them.

Sauza testified that he was saved in the same life boat with Van Sickle. That there were seven men and three women in the boat when he succeeded in getting in. The boat upset and one of the three women, who appeared to be about thirty years of age, thin in flesh and had but little clothing on, was lost. The other two women were saved.

There was some evidence tending to discredit the witness Van Sickle, and also to show that Girard was an actor in a negro minstrel troupe.

Lionel A. Sheldon, for plaintiffs, to show the survivorship of Mrs. Gallier, relied in part upon the presumptions of law raised by the Civil Code of Louisiana. He read the following articles:

"Article 936. If several persons respectively entitled to inherit from one another happen to perish in the same event, such as a wreck, a battle, or a conflagration, without any possibility of ascertaining who died first, the presumption of survivorship is determined by the circumstances of the fact.

"Article 937. In the absence of circumstances of the fact, the determination must be guided by the probabilities resulting from the strength, age and difference of sex, according to the following rules:

"Article 938. If those who have perished together were under the age of fifteen years, the eldest shall be presumed to have survived; if both were above the age of sixty years, the youngest shall be presumed to have survived; if some were under fifteen and some over sixty, the first shall be presumed to have survived.

"Article 939. If those who have perished together were above the age of fifteen years and under sixty, the male must be presumed to have survived when there was an equality of age or a difference of less than one year. If they were of the same sex, the presumption of survivorship by which the succession becomes open in the order of nature must be admitted; thus the younger must be presumed to have survived the elder."

It was conceded that although the case did not fall within the letter of the last article cited, yet it did within its spirit, and as Mr. Gallier was sixty-eight and Mrs. Gallier only forty-four years of age at the time of their death, if the articles of the Code cited were applicable at all, then article 939 raised the presumption that Mrs. Gallier was the survivor. Mr. Sheldon also argued to the jury that if these presumptions did not apply to the case, the evidence was sufficient to enable the jury to find the fact that Mrs. Gallier survived her husband.

H. M. Spofford (with whom was John A. Campbell and Gustavus Schmidt), for defendants.

Those who invoke the aid of a court to disturb others in their possessions must make out their case. The burden of proof is on the plaintiff to establish by evidence the fact that Mrs. Gallier survived her husband. The artificial rules or legal presumptions established by articles 936–939 of the Civil Code of Louisiana do not apply to this case. It is obvious upon the very face of this legislation that these rigid and arbitrary presumptions are exceptional; by the terms of article 937, by which they are introduced, they can be invoked only "in the absence of circumstances of the fact." Such a case might occur where the deceased parties embarked upon a ship which, after proceeding to sea, was no more heard of. But here is a case where "circumstances of the fact" are brought to notice in abundance. We know exactly where the steamship Evening Star perished, and how she perished. We trace Mr. and Mrs. Gallier all through the disastrous voyage, their habits on board, their rising up and sitting down, their positions and relative states of mind and body almost to the very moment when the ship was ingulfed; the plaintiffs even attempt to prove something after that, and to show by evidence of eye witnesses that Mrs. Gallier survived Mr. Gallier. There is, therefore, by the very terms of the Code, no room for any legal presumption, but the case must be determined by "the circumstances of the fact" under the general rules of evidence, applicable to all cases indiscriminately, that is by the common or unwritten law.

Again, there is another conclusive reason, also apparent upon the text of the Code, why these artificial presumptions can find no place in this cause. They were made alone for cases where the commorient persons were "respectively entitled to inherit from one another." So far is this from being the situation of the deceased parties here, that precisely the reverse was the situation. Neither of them was entitled to inherit from the other. Mr. Gallier left a living son who was of course his presumptive heir, and a forced heir to a certain extent. Mrs. Gallier, even if she survived him, was not his heir at all. And, on the other hand, Mrs. Gallier left surviving her, her father (to a certain extent a forced heir), and her brothers and a sister of the half blood, who were her presumptive heirs, and Mr. Gallier, if he survived, was not her heir at all. Nor was there any reciprocity between them. She left no will, but several heirs entitled to inherit from her, of whom he was not one. He left a will instituting his son, James Gallier Jr., universal heir (as he would have been without the will), and charging him with the payment of a particular legacy to his wife. If she had survived him she would have "been entitled to inherit" nothing from him, she would not have been "called to his succession" (appellée à la succession), but would only have received a gift mortis causa out of his estate, of which she would have been in no sense an "heir."

Therefore, the arbitrary presumptions of these articles cannot be invoked in the pres-

ent case without expunging from the Code the limitation of their applicability to cases where the persons perishing together were respectively entitled to inherit from one another. This cannot be done. The articles have been taken almost literally from articles 720–722 of the Code Napoleon. The discussions when those articles were adopted (for they were novel rules, first introduced by that Code) show that these legal presumptions were not intended to regulate any cases save where the parties perishing together were each other's presumptive heirs. That they have no application to legatees by last will is settled in France by an overwhelming preponderance of authority; 1 Chabot, Des Successions, p. 22, Com. sur art. 720, Code Nap.; 2 Delvincourt, Notes et Explic. p. 21; 20 Merl. Répert. verbo "Mort," p. 419; Favard, verbo "Succession," sec. 1, § 1, No. 6; Zachariæ, t. 1, p. 180, § 85; 2 Massé et Vergé sur Zachariæ, p. 237, No. 3; 6 Dur. No. 48; Delaporte, Pandectes Francaises, art. 722; Rolland de Villargues, Rep. du'Notariat, Suc. No. 27; Vuillaume, Com. du Code Nap. p. 198; 3 Demante, No. 22, bis; 2 Ducaurroy Bonnier et Roustaing, No. 401; 4 Troplong, Donations et Test, Nos. 2125, 2126, 2128, 2129; 41 Dalloz, Jurisp. Gen. verbo "Suc.," Nos. 54, 55; 3 Marcadé, No. 27; 13 Demol. "Successions," No. 112. To the same effect there are two arrêts, one of Bordeaux, 29 Janv., 1849, aff. Durup. Dal., p. 50: 2: 180; the other of Paris, 30 Mars, 1850, aff. Roslé, Dal., p. 51: 2: 108. As no proposition is so plain that some ingenious and controversial Frenchman may not be found to dispute it, we find here M. Toullier contending that the presumptions ought to be applied to legatees by last will. He even invents and adds a new legal presumption of his own to apply to the case of commorient twins, and says, if they perish together under fifteen or over sixty, the more robust will be presumed to have survived; if between those ages, the more robust will be presumed to have died first. 2 Toullier, No. 75. It may well be supposed that an author, however brilliant, who indulges in such vagaries as this upon the law of survivorship would have but a slender following. And so he has. Portions of his views have the qualified concurrence of Vazeille, Com. sur art. 720; Maleville, id.; Poujol, t. 1, p. 77 et suiv.; Belost Jolimont sur Chabot; and Teulier, t. 3, No. 119. There are no arrêts in favor of these fanciful doctrines. There being no decisions in our own courts upon these articles, they must be presumed to have been adopted into our Code with the prevailing construction they received in France, the country of their origin, which restricts the presumptions, not only to cases where there are no circumstances of the fact in evidence, but to cases where the co-deceased persons were heirs to each other. This construction but follows the plain text, and gives effect and meaning to every clause in the articles of the Code.

Thus, without any presumptions established by law to influence, in the slightest degree, the decision, we are thrown back upon the rule that he who affirms must prove. The plaintiffs, in order to recover, must establish by evidence, of whose weight the jury are the sole judges, that Mr. Gallier perished before Mrs. Gallier. This, it is true, they may prove by direct or by presumptive evidence. Now "presumptions not established by law are left to the judgment and discretion of the judge (in this case the jury), who ought to admit none but weighty, precise and consistent presumptions." Civ. Code, 2288. In regard to presumptions of this class, or "simple presumptions," as they are sometimes called, it has been held by the supreme court of this state in Bach v. Cohn, 3 La. Ann. 103, that "the known fact on which the presumption reposes must draw with it the unknown fact, as an almost necessary consequence." Under the jurisprudence of Louisiana it is not enough for the plaintiffs to make it merely likely that Mrs. Gallier outlived her husband; they must make it legally certain. This is a general principle as to the quantum of proof required of plaintiffs. Old v. Mart. (La.) 14; Skipwith v. Creditors, 19 La. 206; Wilcox v. Creditors, 2 Rob. [La.] 32. "A party to recover, must make his claim certain; it is not enough to render it probable." Mummy v. Haggerty, 15 La. Ann. 270; Fox v. McDonogh's Succession, 18 La. Ann. 449; Carver v. Harris, 19 La. Ann. 122. In 2 Redf. Wills. p. 158, § 3, it is laid down that "where the testator and the legatee, in contemplation of law, die precisely at the same time, there is no vesting of the legacy." "And again," says Redfield (id.), "it failing to be shown by any satisfactory evidence which died first, the decision must be against the party upon whom rests the burden of the proof." And in this, as in all other cases where a person, to recover, has to show that a particular state of things has arisen, "the evidence must be positive," as held by Lord Cranworth, Lord Chancellor, in the case of Underwood v. Wing, 19 Beav. 439, and s. c., 4 De Gex, M. & G. 633. Upon the trial of this case Lord Cranworth invited those eminent common law judges, Mr. Baron Martin and Mr. Justice Wightman, to sit with him, who advised that as to the priority of death, by drowning in that case, "there might be surmise, and speculation, and guess, but we think there is no evidence." Another branch of the same case, under the name of Wing v. Angrave, went by appeal to the house of lords, and is reported in 8 H. L. Cas. p. 182. All the law lords concurred in the views thus summarized by the reporter of the case: "There is no presumption of law arising from age or sex as to survivorship among persons whose death is occasioned by one and the same cause. Nor is there any presumption of law that all died at the same time. The question is one of fact, depending wholly on evidence, and if

the evidence does not establish the survivorship of any one, the law will treat it as a matter incapable of being determined. The onus probandi is on the person asserting the affirmative."

WOODS, Circuit Judge (charging jury). I am convinced by the argument which has been addressed to me in your hearing by the counsel for defendants that the presumptions of law as to survivorship prescribed by the Civil Code of this state do not apply to this case. This is not the case of persons respectively entitled to inherit from one another, nor is it a case where, "in the absence of circumstances of the fact" the arbitrary presumptions prescribed by the Code can be admitted. You are therefore left to decide the case upon the evidence as it has been submitted to you. You are to determine, if you can from the testimony, whether or not Mrs. Gallier survived her husband. This is the single issue for you to decide. There are no presumptions of law in the case. If the evidence produced by the plaintiffs establishes the fact of survivorship to the satisfaction of your minds, your verdict should be for the plaintiff. But if from the evidence you should be led to the conclusion that Mrs. Gallier perished first, or that both Mr. and Mrs. Gallier died at the same moment, or if it shall be impossible to declare from the evidence, which died first, in either of these cases your verdict should be for the defendant. The question submitted to you is one purely of fact in the decision of which the court can give you little assistance; I can only lay down some general rules of the law of evidence for your guidance.

In the first place the burden of proof is on the plaintiffs to make out their case. They must prove the survivorship of Mrs. Gallier to your satisfaction or their case fails. But I do not understand that the fact of survivorship requires any higher degree of proof than other facts in a civil case. The plaintiffs have the affirmative of the issue, the burden of proof is on them, and unless the testimony in the case satisfies and convinces your minds you cannot return a verdict in their favor; but if you are satisfied and convinced, you can and should. You are not to decide the question on mere surmises or conjectures. You are not authorized to dispose of the rights of the parties by mere guessing. There must be proof, either positive or circumstantial, satisfactory to your minds, on which to base your verdict. You are the sole judges of the credibility of the witnesses and of the weight that ought to be given to their testimony. If a witness has been impeached by proof that in some things not connected with the main facts of the case, he has sworn falsely, you would be justified in discarding his evidence, unless he is corroborated by other evidence. If he is corroborated, the fact that he has sworn falsely

in regard to other matters is no reason why you should reject the facts as to which he is sustained by other proof. It has been argued to you that the fact that Girard was a negro minstrel ought to discredit his evidence. I know of no rule of law to justify such a proposition. All men, until some reason to the contrary is shown, are presumed in law to be worthy of belief. The business in which a person is engaged, if it be an honest one, ought not to discredit him, no matter how humble it may be. You will of course not allow your minds to be influenced by what you may consider the equities of the case. Your duty is simply to determine the question of survivorship. If Mrs. Gallier is shown to your satisfaction to have survived her husband, you will return a verdict for the plaintiffs; if you are not so convinced, you will return a verdict for the defendants.

The jury found for defendants.